IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DIRECT WIRELESS, LLC, ET AL.                                                    PLAINTIFFS

VS.                                                         CIVIL ACTION NO.: 3:09CV62-DPJ-JCS

VERIZON WIRELESS PERSONAL                                             DEFENDANTS
COMMUNICATIONS, LP

ORDER

This commercial fraud case is before the Court on the motion of Defendant Verizon

Wireless Personal Communications, LP ("Verizon") to dismiss Plaintiffs' claims pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim [7].  Having fully considered

the parties' submissions and the relevant authorities, the Court finds that the Defendant's motion

should be GRANTED[1] as to all counts.

I.      **Facts and Procedural History**[2]

In August 2007, representatives from Verizon approached Plaintiff Mel Summerlin for

the purpose of securing Summerlin's services as an authorized agent for the sale of cell phones in

Mississippi.  At the time, Summerlin was still subject to a non-compete agreement with another

cell phone company, so the decision was made to form Direct Wireless, LLC ("Direct").  Direct

was established by Summerlin's attorney W.W. Dreher, Jr. and run by Summerlin's daughter.

---

[1]Defendants alternatively asked the Court to dismiss the Plaintiffs' fraud-based claims for failure to plead with specificity, as required by Federal Rule of Civil Procedure 9(b).  Because the Court has concluded that Plaintiffs' claims must be dismissed under Rule 12(b)(6), the Court does not reach the Rule 9(b) issue.

[2]Since a Rule 12(b)(6) analysis requires the Court to accept the non-movant's allegations of fact as true, the summary of the facts is taken from Plaintiffs' Complaint [1].

During negotiations between Verizon and Direct, Summerlin advised Verizon representatives that Direct's success depended on its ability to sell to governmental entities. Nevertheless, Verizon presented an agreement that explicitly prohibited Direct from making such sales. Summerlin objected to the prohibition, but Verizon assured him that it would agree to amend the contract later to allow those sales. Appeased by Verizon's representations, Dreher signed the agreement on behalf of Direct on October 3, 2007. Despite its assurances, Verizon never allowed Direct to sell to governmental entities, and it informed Direct in July 2009 that no such authority would be extended. Direct went out of business less than one month later, suffering losses of approximately $1,400,000.

Plaintiffs filed suit in this Court on February 3, 2009, alleging fraud, fraud in the inducement, breach of the covenant of good faith and fair dealing, tortious interference with potential business advantage, and conversion. Plaintiffs also request punitive damages. Although Plaintiffs have presented some post-contract averments, they clarify that "all of Direct's claims are based on Verizon Wireless's false promise, *made during its negotiation of the contract*, to allow Direct to sell to large business and government accounts." Direct Wireless LLC's Memorandum in Opposition to Verizon Wireless's Motion to Dismiss at 1 (emphasis added).

Verizon filed the instant motion on March 27, 2009. In response, Plaintiffs agreed that dismissal is required as to Count II (good faith and fair dealing) and Count V (conversion), as well as any claims asserted by Plaintiff Mel Summerlin individually. Therefore, the remaining issues to be addressed in light of Rule 12(b)(6) are Direct's claims of fraud and fraud in the inducement (Counts I and II), tortious interference (Count IV) and punitive damages (Count VI).

## II.    Motion to Dismiss Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  To overcome a Rule 12(b)(6) motion, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555  (quotation marks, citations, and footnote omitted).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal quotations and citation omitted).

## III.    Analysis

This court has diversity based jurisdiction pursuant to 28 U.S.C. § 1332.  Moreover, the parties agree that the choice of law provision in the contract is effective and that this Court must apply the substantive law of the State of New York.  Applying New York law, the Court finds that Defendant's motion is well-taken and should be granted.

### A.    *Plaintiffs' Fraud Claim*s

Counts I and II of Plaintiffs' Complaint allege fraud and fraud in the inducement.  To establish fraud in the State of New York, a plaintiff must show that (1) the defendant knowingly misrepresented a material fact with the intent to deceive plaintiff, and (2) after having justifiably

relied upon such misrepresentation, plaintiff experienced pecuniary loss. *Clearmont Prop., LLC v. Eisner*, 872 N.Y.S.2d 725, 729 (N.Y. App. Div. 2009) (quoting *State v. Indus. Site Servs., Inc.*, 862 N.Y.S.2d 118, 122 (N.Y. App. Div. 2008)). Fraud in the inducement shares these same elements. *See Indus. Site Servs. Inc.*, 862 N.Y.S.2d at 121-22. In the present case, Defendant's motion turns on Plaintiffs' ability to establish justifiable reliance. The Court concludes that Plaintiffs cannot establish this essential element because the contract disclaims all oral representations and contradicts the alleged representations.

                1.     The Disclaimer Provision

When a party signs a contract specifically disclaiming any oral representations, that party cannot claim that it relied on such oral representations when entering into the contract. As stated in the seminal case *Danann Realty Corp. v. Harris*, "a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations." 157 N.E.2d 597, 599 (N.Y. 1959). In addition, although parol evidence is generally admissible to show fraud, "a specific disclaimer denying reliance on oral representations can render parol evidence inadmissible even to substantiate a claim of fraud." *Lucas v. Oxigene, Inc.*, No. 94 Civ. 1691 (MBM), 1995 WL 520752, at *3 (S.D.N.Y. Aug. 31, 1995) (citing *Danann Realty*, 157 N.E.2d at 599).

Direct claims in this case that Verizon fraudulently induced it to sign the contract by promising eventually to allow sales to governmental entities. In addition to a provision expressly precluding such sales, section 19 of the contract, subheaded "Entire Agreement" states:

> This Agreement, including its exhibits, schedules, and addenda, which are incorporated herein by reference, constitutes the understanding between the parties pertaining to the subject matter hereof and supersedes any and all prior

4

agreements and understandings. *There are no other oral or written understandings or agreements between Verizon Wireless and Authorized Agent relating to the subject matter hereof.*

Exh. 1 to Defendant's Motion [7] (emphasis added). This paragraph is the final paragraph of the contract and appears immediately above the parties' signatures.[3]

These facts are substantially similar to those addressed in *Lucas v. Oxigene, Inc.*, in which a corporate officer was induced to sign a revised employment contract. 1995 WL 520752, at *3 (S.D.N.Y. Aug. 31, 1995). The *Lucas* contract stated that the Board of Directors retained discretion to disallow requests to accelerate stock options. Plaintiff claimed that he was coaxed into signing the agreement by the promise that the board would allow acceleration upon request. The contract also included a merger provision similar to section 19 of the subject contract. When the board denied plaintiff's request to accelerate his stock options, plaintiff sued. Judge Mukasey granted the defendant's motion to dismiss holding under New York law that the parol evidence was properly excluded "because plaintiff signed an agreement laden with disclaimers, containing a clause which directly contradicted the alleged oral representations . . . ." *Id*. at *5. Here, Plaintiffs generally failed to address this argument or the holding in *Lucas*. The Court finds that the fraud claims must be dismissed

---

[3]Although not addressed in Defendant's motion, section 13 of the contract arguably disclaims relevant representations when it states: "AUTHORIZED AGENT HAS INDEPENDENTLY INVESTIGATED THE CMRS OR EQUIPMENT SALES BUSINESS AND THE PROFITABILITY (IF ANY) AND RISKS THEREOF AND IS NOT RELYING ON ANY REPRESENTATION, GUARANTEE, OR STATEMENT OF VERIZON WIRELESS OTHER THAN AS SET FORTH IN THIS AGREEMENT." *Id*.

2.      The Contradictory Contract Language

The second reason Direct cannot establish a claim for fraud is that it executed a contract which explicitly contradicted the promises upon which it now claims to have relied.  The rule of *Danann Realty*, set forth *supra*, has been extended by New York courts to apply to situations where the terms of the contract contradict the oral misrepresentation, even in the absence of a merger clause or disclaimer provision.  *See e.g. Clanton v. Vagianelis*, 592 N.Y.S.2d 139, 140 (N.Y. App. Div. 1993) (quoting *Bango v. Naughton*, 584 N.Y.S.2d 942, 943 (N.Y. App. Div. 1992)) (holding that "the conflict between the provisions of the written contract and the oral representations negates the claim of reliance upon the latter").  According to *Bango*, "the rationale underlying [*Danann Realty*] applies in any case where, as here, an express provision in the written contract contradicts the claimed oral representations in a meaningful fashion."  584 N.Y.2d at 943; *see also Marine Midland Bank, N.A. v. Cafferty*, 571 N.Y.S.2d 628, 630–31 (N.Y. App. Div. 1991) (finding no justifiable reliance "[w]here the person claiming to have been defrauded has by specific contract provisions agreed to terms which are contrary to the oral promises allegedly relied upon"); *N.Y. State Urban Devel. Corp. v. Marcus Garvey Brownstone Houses, Inc.,* 469 N.Y.S.2d 789, 795 (N.Y. App. Div. 1983) (observing that a party cannot claim justifiable reliance on oral misrepresentation "[i]n the face of the outstanding conflict between the alleged oral representations and the uncontroverted documentary evidence").

Indeed, New York courts have applied this principle even where the oral representation was not explicitly contradicted by the contract.  *See Citibank, N.A. v. Plapinger*, 485 N.E.2d 974, 977 (N.Y. 1985) (finding no justifiable reliance where oral guarantee was merely inconsistent with terms of signed agreement); *Clanton v. Vagianelis*, 592 N.Y.S.2d at 140–41 (dismissing

6

fraud claims even where agreement terms did not contradict oral promise, but plaintiff could have discovered true facts by investigating documents incorporated into the agreement by reference).

The misrepresentations upon which Direct bases its fraud claims contradict the express language of the contract and would fall short under the New York authority Verizon cited in its initial memorandum. Direct makes no effort to explain or rebut this authority, and the only case Direct cites to support its fraud claims is *Urfirer v. Cornfield*, a non-binding decision from the Eleventh Circuit that is easily distinguishable. 408 F.3d 710 (11th Cir. 2005). In *Urfirer*, the court applied New York law and held that fraudulent inducement claims are not barred by fraudulently induced waiver agreements. *Urfirer* is inapposite as the case at bar does not involve the issue of waiver. Direct makes no other effort to support its fraud claims which are now ripe for dismissal.

B.     *Direct's Tortious Interference Claim*

In New York, "tortious interference with prospective business relationships is actionable . . . as tortious interference with prospective economic advantage." *Constantin Assocs. v. Kapetas*, 851 N.Y.S.2d 68 (Table) (N.Y. Sup. 2007). To establish a claim of tortious interference with prospective economic advantage, a plaintiff must demonstrate that the defendant's interference with its prospective business relations was accomplished by "wrongful means" *or* that defendant acted for the sole purpose of harming the plaintiff. *Caprer v. Nussbaum*, 825 N.Y.S.2d 55, 78 (N.Y. App. Div. 2006) (citing *Snyder v. Sony Music Entm't, Inc.*, 252 A.D.2d 294, 299–300 (N.Y. App. Div. 1999) (emphasis added). Direct's factual allegations are insufficient to support a tortious interference claim under either test.

First, Direct cannot show that Verizon interfered with Direct's prospective business advantage by wrongful means. "'Wrongful means' includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure, but more than simple persuasion is required." *Snyder*, 684 N.Y.S.2d at 239. In this case, the only wrongful means predicating Direct's tortious interference claim is the now dismissed allegations of fraud. Verizon argues that the derivative tortious interference claim must therefore be dismissed. *See id.* (dismissing tortious interference claim based on dismissed allegation of slander). Plaintiffs failed to respond to this argument which is otherwise well-taken.

Similarly, Direct cannot establish that Verizon acted for the sole purpose of harming Direct. Under New York law, actions taken in "self-interest or other economic considerations" do not constitute a "sole purpose" of harm. *Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017 (KMK), 2007 WL 2781246, at *18 (S.D.N.Y. Sept. 24, 2007) (quoting *Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.*, 803 N.Y.S.2d 512, 513 (N.Y. App. Div. 2005)) (holding that claim of tortious interference not sustainable where "there [was] not even an allegation that non-economic considerations motivated" the defendant's actions). Here, Direct does not allege that Verizon acted with the sole purpose of harming Direct. Direct failed to respond to this portion of Defendant's memorandum which appears to be otherwise well-taken.

Finally, Direct agrees that it cannot identify any third parties with whom it could have established a business relationship but for Verizon's alleged tortious interference. Plaintiff's Memo. [11] at 5. Direct requests an opportunity to prove up the claim through discovery, but "[a]llegations of tortious interference must be more than just mere suspicions, and, therefore, the complaint must allege 'interference with a specific identified business relationship with a third

8

party.'" *Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 316–43 (N.D.N.Y. 2007) (quoting *Camp Summit of Summitville, Inc. v. Visinski*, No. 06-CV-4994, 2007 WL 1152894, at *14 (S.D.N.Y. Apr. 16, 2007)).

      C.     *Remaining Issues*

Having dismissed Plaintiffs' substantive claims, the Court likewise dismisses their claim for punitive damages in Count V of the Complaint. Finally, Summerlin's individual claims, which were pled in conjunction with Direct's claims, must be dismissed for the above stated reasons.[4]

**IV.    Conclusion**

Based on the foregoing, the Court finds that Plaintiffs' Complaint fails to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Therefore, it is hereby ORDERED that Defendant's Motion to Dismiss is GRANTED and Plaintiffs' claims are dismissed with prejudice.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

      **SO ORDERED AND ADJUDGED** this the 7th day of July, 2009.

                           s/ *Daniel P. Jordan III*
                           UNITED STATES DISTRICT JUDGE

---

[4]Summerlin conceded in response to Defendant's motion that his individual claims should be dismissed for the reasons stated in Defendant's memorandum, but he requested dismissal without prejudice. Having found the claims otherwise lacking, the Court must dismiss the claims with prejudice.